## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BARBARA ROBY,
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

GOHEALTH, LLC,
a foreign limited liability company,

        Defendant,

_____/

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

**COMES NOW**, Plaintiff Barbara Roby (hereinafter, "Roby" or "Plaintiff"), individually and on behalf of all others similarly situated, and sues GoHealth, LLC, (hereinafter, "GoHealth" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.    This case concerns illegal telemarketing conduct wherein Defendant advertised the sale of health insurance through automated text messages to the class member's telephone numbers without prior express written consent.

2.    Defendant's conduct violates the Telephone Consumer Protection Act, 47 United Stated Code, Section 227 *et seq*. (hereinafter, "TCPA") and the Federal Communication Commission's (FCC's) regulations, 47 C.F.R. § 64.1200(a).

3.    Roby brings this putative class action for statutory damages and injunctive relief under the TCPA on behalf of a class of similarly situated persons as more fully described herein.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction pursuant to 28 United States Code, Section 1331 and 47 United States Code, Section 227 *et seq.*

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district; Chicago, Illinois is the principal place of business for Defendant and its actions giving rise to this claim occurred in this District.

## PARTIES

6.      Plaintiff Barbara Roby is, and at all times mentioned herein was, an individual citizen of the state of Texas, who resides in Garland, Texas.

7.      GoHealth is a limited liability company formed under the laws of the state of Delaware, with its principal place of business at 214 W Huron St., Chicago, Illinois.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991 (TCPA), 47 UNITED STATES CODE, SECTION 227

8.      Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints regarding telemarketing robocalls.

9.      Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

- 2 -

10.     Even back in 2012, the Pew Research Center has reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a weekly basis.  Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems.   Plaintiff is one such person.

11.      Consumer complaints about this conduct have only increased since then.  "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today and Defendant's conduct in this case is a good reason why.

12.     The Federal Trade Commission (FTC) and Federal Communications Commission (FCC) regularly cite "unwanted and illegal robocalls" as their number-one complaint category. The FTC received more than 1.9 million complaints filed in the first five months of 2017 and about 5.3 million in 2016. The FCC has stated that it gets more than 200,000 complaints about unwanted telemarketing calls each year.  These complaints are on top of the complaints each state AG's office receives and also does not include the millions of unreported calls.

13.     In an effort to curb these unwanted texts and calls, the TCPA regulates, *inter alia*, the use of automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls or send text messages to any cellular telephone number.  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

14. The TCPA's prohibitions are essential to eliminating the scourge of text message spam. A recent study found that 80% of Indians, who until very recently did not have similar legal protections, received more than four unwanted spam text messages every single day. *See* https://qz.com/india/1573148/telecom-realty-firms-banks-send-most-sms-spam-in-india/

15. Text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

16. In 2012, pursuant to its rulemaking authority under the TCPA, the FCC imposed even stricter requirements on "advertising" and "telemarketing" text messages by making it unlawful to:

> Initiate, or cause to be initiated, any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]

47 C.F.R. § 64.1200(a)(2). This prior express written consent requirement became effective on October 16, 2013.

17. The term "prior express written consent" means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an

agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8). In other words, the agreement "must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd 7961, 8012-8013 ¶ 98 (F.C.C. July 10, 2015).

## A BRIEF OVERVIEW OF TEXT MESSAGING

18.     In recent years, companies who have often felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which they can send bulk solicitations cheaply.

19.     One of the types of such bulk marketing is to advertise or conduct surveys through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

20.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

21.     The open rate for text messages exceeds 99 percent, and 90 percent of those messages are read within three minutes. Conversely, the open rate for email in the retail industry is 31 percent.

22.     Unlike more conventional advertisements, text calls, and particularly wireless or mobile spam, can cost their recipients money because cellphone users must frequently pay their respective wireless service providers either for each text message call

they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized or whether they prepay for these plans.

23.     Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones.  Short codes are usually only used to send automated messages.  It is impossible for a single human being to send a text message using a short code.

24.     The Federal Communication Commission ("FCC") has recognized that wireless customers are charged for incoming calls and text messages whether they pay in advance or after the minutes are used.   These types of damages are the same shared by the Plaintiff and the class members.

## FACTUAL ALLEGATIONS

25.     Plaintiff is a natural person and citizen of the state of Texas, and is a "person" as defined by 47 U.S.C. § 153(39).

26.     At all times relevant to this action, Plaintiff was the subscriber and account holder for cellular telephone service to the number (469) XXX-1122, and responsible for paying the bills for the use of that number.

27.     On October 2, 2009, Plaintiff registered the 1122 number on the National Do Not Call Registry.

28.     At all times relevant to this action, Plaintiff's ninety-year old mother, Sylvia Schick, was the primary user of the 1122 number.

29.     On November 27, 2018, Defendant or its agent utilized the SMS short code 91952 to send the following text message to the 1122 number:

"New Medicare Supplement plans and prices are available.  Talk to a

licensed agent about your options now at 888-912-6551 (Reply STOP to opt out)"

30.     On December 7, 2018, Defendant or its agent utilized the SMS short code 91952 to send the following text message to the 1122 number:

"Medicare deadline today!  Call 888-912-6551 to speak with a licensed agent now about new Medigap plans and prices.  (Reply STOP to opt out)"

31.     On December 7, 2018, only a few minutes later, Defendant or its agent utilized the SMS short code 91952 to again send the following text message to the 1122 number:

"Medicare deadline today!  Call 888-912-6551 to speak with a licensed agent now about new Medigap plans and prices.  (Reply STOP to opt out)"

32.     Given the generic and scripted nature of these messages, the use of a short code, and the embedded opt out functionality, each of the messages described above was sent by an automatic telephone dialing system.

33.     On December 10, 2018, Mrs. Schick's daughter, Deborah Schick, called the 6551 number in the above text messages to inquire about these text messages.

34.     During that call, Deborah spoke to a representative of GoHealth who attempted to sell a health insurance plan for Sylvia Schick.

35.     Neither Plaintiff nor Sylvia Schick had consented to receiving automated telemarketing messages regarding health insurance from GoHealth or anyone acting on GoHealth's behalf.

36.     Defendant's texts harmed Plaintiff by violating her rights under the TCPA.

37.     Defendant's texts harmed Plaintiff by trespassing upon and interfering with her rights and interests in the 1122 number.

38.     As the subscriber to the 1122 number, Plaintiff has standing to bring this

claim. *See Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637 (7th Cir. 2012); *Maraan v. DISH Network, L.L.C.*, 2014 U.S. Dist. LEXIS 162241 (S.D. Ohio 2014); *Palm Beach Golf Center-Boca, Inc. v. Sarris,* 771 F.3d 1274, (11th Cir. Oct. 30, 2014) *Moore v. DISH Network, L.L.C.*, 2014 U.S. Dist. LEXIS 146799, (N.D. W.Va. Oct. 15, 2014); *Gutierrez v. Barclays Group*, No, 2011 U.S. Dist. LEXIS 12546 (S.D. Cal. Feb. 9, 2011).

39.     On or around February 21, 2019, Mrs. Schick assigned any claims she had pertaining to these telephone calls to Plaintiff.

40.     Plaintiff also has standing to bring this claims as the assignee of Sylvia Schick's claims.

## CLASS ACTION ALLEGATIONS

41.     Roby brings this action individually and on behalf of all other persons similarly situated (hereinafter, "the Classes") pursuant to Federal Rule of Civil Procedure 23.

42.     Roby proposes the following Class definitions, subject to amendment as appropriate:

Autodialed Calls Class

All persons within the United States subscribing to a cellular telephone number to which GoHealth, or someone acting on GoHealth's behalf, sent a text message for health insurance marketing purposes, from November 27, 2014 through the date the Court rules on Plaintiff's motion for class certification, using the same dialing system used to contact Plaintiff's phone number.

Do Not Call List Class

All persons within the United States subscribing to a cellular telephone number registered on the National Do Not Call Registry to which GoHealth, or someone acting on

GoHealth's behalf, sent at least two text message solicitations concerning health insurance during a 12 month period, from November 27, 2014 through the date the Court rules on Plaintiff's motion for class certification.

43.     Collectively, all these persons will be referred to as "Class Members." Roby seeks to represent and is a member of each Class.

44.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

45.     Roby does not know the exact number of Class Members, but Roby reasonably believes Class Members number, at minimum, to be in the thousands, if not tens of thousands, of people.

46.     Roby and all Class Members have been harmed by the acts of the Defendant.

47.     This Class Action Complaint seeks injunctive relief and money damages.

48.     The joinder of all Class Members is impracticable due to the size and relatively modest value of each individual claim.

49.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

50.     Further, the Classes can be identified easily through records maintained by Go Health, and/or their telemarketing agents.

51.     There are well defined, nearly identical, questions of law and fact affecting all parties.

52.     There is a well-defined community of interest in the questions of law and fact involved affecting Class Members.  Among the questions of law and fact which are common to the Class, and which predominate over questions affecting individual Class Members, are the following:

a.          Whether the system(s) used to send the text messages are automatic telephone dialing systems under the act;

b.          Whether Defendant's conduct was knowing and/or willful;

c.          Whether any form of consent that Defendant purports to have obtained from the Class Members, if any, qualifies as Prior Express Written Consent under the FCC's rules.

53.     Roby asserts claims that are typical of each Class Member, as each are persons who received non-emergency text messages from Defendant with an automatic telephone dialing system, without Class Members' Prior Express Written Consent.

54.     Further, Roby will fairly and adequately represent and protect the interests of the Classes.

55.     Roby has no interests which are antagonistic to the Classes or to any Class Member.

56.     Roby has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

57.     A class action is the superior method for the fair and efficient adjudication of this controversy.

58.     Class wide relief is essential to compel the Defendant to comply with the

TCPA.

59. A Class Member's interest in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendant from engaging in the same behavior in the future.

60. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all systemically and automatically dialed, and the Class Members, by definition, did not provide the Prior Express Written Consent, as required under the statute, to authorize such calls to their cellular telephones.

61. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to each Class as a whole appropriate.

62. Moreover, on information and belief, Roby and Class Members allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### COUNT ONE:
### DIRECT LIABILITY FOR CALLS MADE IN VIOLATION OF
### 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2).

63. Roby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

64. Defendant initiated telemarketing text messages to cellular telephone numbers using automatic telephone dialing systems without prior express consent.

65. The foregoing acts and omissions constitute numerous and multiple violations of 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2).

66. Defendant is directly liable for these violations because the text messages were sent by Defendant taking steps necessary to physically place the calls.

67. As a result of the Defendant's violations, Roby and Class Members are entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute, pursuant to United States Code, Section 227(b)(3)(B), plus up to treble damages for each violation found to be willful or knowing.

68. Roby and Class Members are also entitled to, and do seek, injunctive relief prohibiting the Defendant's conduct in the future as described below.

**COUNT TWO:**
**VICARIOUS LIABILITY FOR CALLS MADE IN VIOLATION OF**
**47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2)**

69. Roby incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

70. In addition to being directly liable, GoHealth is vicariously liable for the calls under theories of actual authority, apparent authority, and ratification.

71. GoHealth and their agents contracted with unknown entities for the specific purposes of placing automated telemarketing text messages to leads.

72. GoHealth and their agents controlled the campaign parameters for these messaging campaigns and chose the messages and scripts that would be used for these messages.

73. The messages were sent with the knowledge and approval of GoHealth and

were sent under GoHealth's control.

74.     By hiring vendors to telemarket their services and products through autodialers, GoHealth "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

75.     Similarly, these unkown vendors "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf GoHealth, as described in the Restatement (Third) of Agency.

76.     GoHealth also ratified these unlawful actions by knowingly accepting the benefits of the autodialed calls, including additional business prospects and revenue.

## COUNT THREE:
## DIRECT LIABILITY FOR CALLS MADE IN VIOLATION OF
## 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

77.     Roby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

78.     Defendant initiated multiple text messages solicitations within a 12 month period to residential telephone numbers assigned to cellular service despite their registration on the National Do Not Call Registry, without signed, written prior express invitation or permission.

79.     The foregoing acts and omissions constitute numerous and multiple violations of 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

80.     Defendant is directly liable for these violations because the text messages were sent by Defendant taking steps necessary to physically place the calls.

81.     As a result of the Defendant's violations, Roby and Class Members are

entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute, pursuant to United States Code, Section 227(c)(5), plus up to treble damages for each violation found to be willful or knowing.

82.     Roby and Class Members are also entitled to, and do seek, injunctive relief prohibiting the Defendant's conduct in the future as described below.

### COUNT FOUR:
### VICARIOUS LIABILITY FOR CALLS MADE IN VIOLATION OF
### 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)

83.     Roby incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

84.     In addition to being directly liable, GoHealth is vicariously liable for the calls under theories of actual authority, apparent authority, and ratification.

85.     GoHealth and their agents contracted with unknown entities for the specific purposes of placing text message solicitations to leads.

86.     GoHealth and their agents controlled the campaign parameters for these messaging campaigns and controlled the messages and scripts that would be used for these messages.

87.     The messages were sent with the knowledge and approval of GoHealth and were sent under GoHealth's control.

88.     By hiring vendors to telemarket their services and products through text message solicitations, GoHealth "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

89.     Similarly, these unkown vendors "manifest[ed]  assent or otherwise

consent[ed] . . . to act" on behalf GoHealth, as described in the Restatement (Third) of Agency.

90.     GoHealth also ratified these unlawful actions by knowingly accepting the benefits of the autodialed calls, including additional business prospects and revenue.

### PRAYER FOR RELIEF

WHEREFORE, Roby requests that the Court enter judgment in his favor and favor of the Classes and against Defendant for:

a.     A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.     An injunction requiring Defendant not to autodial any numbers obtained through means other than signed, prior express written consent that complies with the TCPA and FCC's rules.

c.     An injunction requiring Defendant not to send text message solicitations to numbers registered on the national do not call list;

d.     An award of statutory damages for Roby and each Class Member in the amount of $500.00 for each and every message that violated the TCPA;

e.     An award of treble damages, as provided by statute, of up to $1,500.00 for Roby and each Class Member for each and every willful or knowing violation;

f.     An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Roby is a proper representative of the Classes, and appointing the lawyers and law firms representing Roby as counsel for the Classes;

- 15 -

      g.     An award of Roby's attorneys' fees, litigation expenses and costs of suit; and

      h.     Such further and other relief the Court deems reasonable and just.

      i.     Roby, individually and on behalf of all others similarly situated, demands trial by jury.

Respectfully Submitted,

/s/ Timothy J. Sostrin
**KEOGH LAW, LTD.**
Keith J. Keogh,
Timothy J. Sostrin
55 W. Monroe St. Ste. 3390
Chicago, IL 60603
(312) 726-1092 / (312) 726-1093
keith@keoghlaw.com
tsostrin@keoghlaw.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury.

/s/ Timothy J. Sostrin
**KEOGH LAW, LTD.**
Keith J. Keogh,
Timothy J. Sostrin
55 W. Monroe St. Ste. 3390
Chicago, IL 60603
(312) 726-1092 / (312) 726-1093
keith@keoghlaw.com
tsostrin@keoghlaw.com
*Attorneys for Plaintiff*